**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **Case No. 1:22-cr-317 (TSC)** |
| **KASEY HOPKINS,** | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

**GOVERNMENT'S MOTION TO HOLD IN ABEYANCE**
**AND, IN THE ALTERNATIVE, GOVERNMENT'S MEMORANDUM IN**
<u>**OPPOSITION TO MOTION FOR EARLY TERMINATION OF PROBATION**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves to hold in abeyance Defendant Kasey Hopkins's Motion for Early Termination of Probation, ECF No. 38. If not held in abeyance, the government opposes Hopkins's motion for early termination of probation. The United States has consulted with the United States Probation Office, and although they note Hopkins's compliance with his conditions of supervision, they do not recommend early termination of probation due to Hopkins's only having been under supervision since November 29, 2023.

**I.**   <u>**Factual Background**</u>

Hopkins's conduct is discussed in greater detail in the United States's Sentencing Memorandum ("Gov. Sentencing Memo") (ECF # 31) and in the Statement of Offense (ECF #22). On January 5, 2021, Kasey Hopkins flew to Washington, D.C. from his home in Kansas City, Kansas, to attend the "Stop the Steal" rally. Prior to traveling, on January 3, 2021, Hopkins solicited another individual (Person 1) to travel with him, discussed the potential of a "Civil War," and proposed forming a group of "Proud Felons for Trump" when he heard the Proud Boys might not accept men with felony convictions. Gov. Sentencing Memo at 2-3.

At approximately 2:54 p.m., Hopkins entered the Capitol through a fire door near the Senate Parliamentarian's Office. ECF # 22 (Statement of Offense) at ¶ 8. Hopkins can be seen recording the unfolding events with his phone, including his own brief entry into the Senate Parliamentarian's Office. Hopkins exited the building through the same door he entered approximately three minutes later.



*Image 1* from Sentencing Exhibit 1 – Hopkins enters the Senate Parliamentarian's Office

Rather than leave the Capitol, Hopkins re-entered the Capitol through the nearby Senate Wing Door. When Hopkins re-entered at approximately 3:06 p.m., the windows next to the Senate Wing Door had been broken and furniture was overturned in the lobby.



*Image 2* from Sentencing Exhibit 2 – Hopkins enters through the Senate Wing Door

Hopkins walked down the hallway in the upper left of Image 2 and entered the private hideaway office of Senator Jeffrey Merkley. Although the "hideaway" office was not marked as the office of a United States Senator or any other person, it was clearly recognizable as a private office. Inside, there was a crowd of people ransacking the office and smoking marijuana. There was an individual in a chair wearing a false beard (Brandon Fellows, the defendant in case 21-CR-83). Hopkins took a picture of Fellows using Fellows' phone. An individual "live-streaming" from inside the office (Sentencing Exhibit 3, the video from which Images 3 and 4 are taken) described it as an "office" and a person can be heard stating that it smells of teargas. Hopkins is also in this brief video. The video also depicts individuals smoking marijuana and one individual who appears to be rolling up a poster that was taken from the office.



*Image 3 (cropped)* from Sentencing Exhibit 3– Hopkins takes a picture of Fellows



*Image 4* from Sentencing Exhibit 3– Hopkins in Senator Merkley's Office

Hopkins eventually made his way back to the Senate Wing Door and exited through the same door he entered (the second time) at approximately 3:15 p.m.  Hopkins remained on the Capitol Grounds at least until 4:02 p.m., per the time stamp on a photograph from Hopkins's iCloud account.

## II.   **Procedural Background**

On August 4, 2022, the United States charged Hopkins by criminal complaint with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). ECF No. 1. On August 5, 2022, law enforcement officers arrested him at his home in Kansas. On September 22, 2022, the United States charged Hopkins by a four count Information with violating 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G).[1] ECF No. 16. On December 20, 2022, pursuant to a plea agreement, Hopkins pleaded guilty to Count Four of the Amended Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). On April 10, 2023, this Court sentenced Hopkins to a "split sentence"—a term of imprisonment and a term of probation—under 18 U.S.C. § 3561(a)(3): four months' incarceration followed by 24 months' probation, $500 in restitution, and a $10 special assessment. ECF No. 32. Hopkins has served the four-month period of incarceration and approximately six-and-a-half months on probation.[2]

On January 26, 2024, Hopkins moved to terminate probation. ECF No. 38.

---

[1] On October 7, 2022, the United States filed an Amended Information only amending the defendant's name.

[2] Hopkins was under supervision between the sentencing hearing on April 10, 2023, and his surrender date on August 1, 2023. Supervision resumed on November 29, 2023, when he was released from prison after completing his term of incarceration.

III. **Hopkins's Motion Should Be Held In Abeyance Pending The D.C. Circuit's Decision In _Caplinger_**

Hopkins argues, presumably relying on the D.C. Circuit's decision in *United States v. Little*, 78 F.4th 453, 454 (D.C. Cir. 2023), that his sentence was "illegal." ECF No. 38, at 1. But the question of whether resentencing, rather than early termination of probation, is the proper remedy for sentences invalidated by *Little* is presently before the D.C. Circuit in *United States v. Caplinger*, Case No. 22-3057 (Doc. No. 2030968, filed Dec. 11, 2023). In its ruling, the D.C. Circuit is expected to clarify whether the defendant is entitled to immediate relief from the probationary term of his split sentence, the same issue presented by Hopkins's motion to this Court. Because any ruling will likely be dispositive, and to conserve judicial resources, the government submits that any decision on Hopkins's motion be held in abeyance pending a decision in *Caplinger*. *See Khadr v. Bush*, 587 F. Supp. 2d 225, 229 (D.D.C. 2008) ("Resolving a motion to stay or to hold a matter in abeyance pending the outcome of a related or parallel proceeding turns upon the unique circumstances of the case, and is largely a matter of discretion for the court. A court may grant such a motion if it finds that '[i]n the interest of judicial economy and avoiding unnecessary litigation' a stay is appropriate.").[3]

Further, the interests of justice weigh in favor of abeyance. Holding the motion in abeyance cannot offend the interests of justice where Hopkins has no substantial likelihood of prevailing on

---

[3] *But see United States v. Pryer*, No. 21-cr-667-RCL-2, 2024 WL 404378, at *8-9 (D.D.C. Feb. 2, 2024). In *Pryer*, Judge Lamberth denied the government's request to hold a defendant's motion for early termination of probation in abeyance pending the D.C. Circuit's decision in *Caplinger*, finding that "a motion for early termination presents issues distinct from those in *Caplinger*." *Id.* at *9. The government acknowledges that *Caplinger*—a case on direct appeal—arises in a different procedural posture but respectfully submits that the issue presented to the D.C. Circuit in that case is whether the probationary component of an illegal split sentence must be vacated if the incarceration component has already been served. Despite the difference in procedural posture, the D.C. Circuit's confirmation that resentencing—and not simply ending the probationary term—is the proper avenue for remedying an illegal sentence will be controlling.

the merits under the current state of the law. No legal authority supports Hopkins's assertion that the mere fact that he was sentenced to an illegal split sentence warrants early termination of probation. Hopkins cites no such authority and, in fact, the authority that does exist is to the contrary. As detailed further below, the illegality of a sentence is insufficient grounds to grant early termination of probation under 18 U.S.C. § 3564(c). *See* 18 U.S.C. § 3564(c) (court may grant early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice").

Moreover, Hopkins has no basis to argue that the illegality of the sentence necessitates that the probationary term be voided after fully serving the term of imprisonment. The D.C. Circuit implicitly rejected a similar argument in *Little* by remanding the case for resentencing, even where the defendant had fully served the originally imposed term of incarceration and where, on this basis, the defendant argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term," Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. And, in another split sentence case, the district court squarely rejected the notion "that an illegal sentence must be treated as void." *See United States v. Pryer*, No. 21-cr-667-RCL-2, 2024 WL 404378, at *8 (D.D.C. Feb. 2, 2024). Given the current state of the law, Hopkins would suffer no prejudice were the Court to hold his motion in abeyance pending the D.C. Circuit's decision in *Caplinger*.

## IV. Resentencing Is The Appropriate Remedy For An Unlawful Split Sentence Of Incarceration And Probation

Should the Court choose not to hold it in abeyance, the government respectfully opposes Hopkins's motion for early termination of probation. Hopkins appears to seek early termination

based on the D.C. Circuit's decision in *Little*, which held that a defendant convicted of a single petty offense may not be sentenced both to imprisonment and to probation for that offense. *See Little*, 78 F.4th at 454. Having already served the imprisonment component of his sentence, Hopkins, as did Little, seeks to terminate the remaining probationary period. But early termination is not the appropriate remedy for an illegal sentence (i.e., one in excess of the statutorily authorized term).

Where a court has imposed an illegal sentence, the remedy is not to automatically terminate that sentence, thereby nullifying the court's carefully crafted punishment. Rather, the remedy for an unlawful sentence is to vacate the sentence in its entirety and impose a lawful sentence. *See Little*, 78 F.4th at 461 ("So we vacate Little's [split] sentence and remand to the district court for resentencing."); *see also Davenport v. United States*, 353 F.2d 882, 883-84 (D.C. Cir. 1965) ("The appropriate remedy in this situation would appear to be to vacate appellant's [illegal] sentence and remand his case to the District Court for resentencing. . . ."); *Hayes v. United States*, 249 F.2d 516, 517 (D.C. Cir. 1957) (upholding resentencing by district court, noting that "if the sentence were invalid and defendant successfully attacked it, he could be validly resentenced though the resentence increased the punishment").

In the government's view there are three possible options available to the Court on resentencing, presented in no particular order: <u>*first*</u>, the Court may impose a term of probation or incarceration equal to the amount of time already served on probation or incarceration; <u>*second*</u>, the Court may impose a term of probation longer than the time already served on probation with credit for time already served on probation and additional credit for time spent incarcerated; and <u>*third*</u>, the Court may impose a term of incarceration longer than the previously served term of

incarceration, with credit for incarceration time already served and additional credit for time spent on probation.[4]

The D.C. Circuit's decision in *Little* shows that resentencing is the proper path for addressing an unlawful split sentence. Little had already served his term of imprisonment when he submitted his brief to the D.C. Circuit and, for this reason, he argued that "the proper remedy [for his split sentence] is to reverse and remand with instructions that [he] be immediately discharged from probation and that an amended judgment be issued reflecting no probationary term." Br. for Appellant, *United States v. Little*, No. 22-3018 (July 28, 2022) at 40. The D.C. Circuit did not find merit in this position because it did not end Little's probationary term despite finding his split sentence to be unlawful. Instead, the D.C. Circuit "vacate[d] Little's sentence and remand[ed] to the district court for resentencing." *Little*, 78 F.4th at 461.

Resentencing after the imposition of an unlawful sentence is especially appropriate where, as here and as in *Little*, the district court imposed a split sentence of incarceration and probation for the commission of a single offense. This Court crafted a sentence comprised of two components—a term of incarceration and a term of probation—to best address the statutory sentencing factors of 18 U.S.C. § 3553(a). Both components of the sentence were integral parts of a unified package the Court constructed to fulfill its statutory responsibility to "impose a sentence

---

[4] The resentencing in *Little* is instructive. Little was originally sentenced to a split sentence of 60 days' imprisonment and 36 months' probation. At the time of resentencing, after remand from the D.C. Circuit, Little had completed his term of imprisonment and approximately 18 months of probation. At the resentencing, the Court imposed a prison sentence of 150 days. *See Little*, No. 21-CR-315-RCL, Minute Entry for Resentencing (D.D.C. Jan. 25, 2024); *see also United States v. Little*, No. 21-CR-315-RCL, 2024 WL 386718 (D.D.C. Jan. 25, 2024) (Notes for Resentencing). The Court credited the 60 days of incarceration that Little previously served and gave an additional 30 days of credit against the new sentence for the 18 months of probation already served. Thus, after accounting for 90 days of credit for time previously served, Little will serve an additional 60 days of prison under the lawful sentence imposed at resentencing.

sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). The components of Hopkins's sentence were inextricably intertwined, and simply vacating the term of probation without any further consideration—as Hopkins now requests—would undo the sentencing scheme carefully crafted by this Court.

Analogy to resentencing under the sentencing package doctrine underscores the need for resentencing here. "The sentencing package doctrine recognizes that when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townshend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). In other words, where multiple counts of conviction are "properly viewed as a package," the "sentences [are], in essence, one unified term of imprisonment." *Id.* at 570 (internal quotation marks omitted). And "successful attack by a defendant on some but not all counts of conviction" may necessitate "vacat[ing] the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

The logic underlying resentencing in the sentencing package context applies equally in the split sentence context. Like Little, Hopkins was only convicted of a single count, and the sentence this Court imposed can only be attributed to that offense. The two components of Hopkins's sentence must be "properly viewed as a package" tailored to the statutory sentencing factors as they relate to Hopkins's single count of conviction. *Townshend*, 178 F.3d at 570. And since the decision in *Little* unraveled the "overall plan" this Court crafted here, *id.* at 567, the Court should

be given the opportunity, to "reconfigure the sentencing plan to ensure it remains adequate to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw*, 554 U.S. at 253.

The connection between the two components of Hopkins's split sentence is further evidenced by the term of incarceration originally imposed. The Court imposed a period of incarceration of four months, which is below the statutory maximum sentence of six months, knowing that a significant period of supervision in the form of probation would follow. The sentence was fashioned holistically, and the probationary term was a companion to, and arguably an offset for, a term of imprisonment below the statutory maximum. Now that the D.C. Circuit's decision in *Little* has invalidated the carefully balanced sentence originally imposed, the Court can address the interplay between these components and determine at resentencing how the initial sentence should be adjusted to bring it into conformity with what is legally authorized and to ensure that it achieves the intended punitive effect. This does not necessarily mean Hopkins would face a longer term of incarceration or the imposition of a new term of probation if resentenced. Hopkins is entitled to credit for the portion of his sentence already served, and upon review of the 18 U.S.C. § 3553(a) sentencing factors, the Court may decide that a new sentence equivalent to time served is appropriate.

Rather than seek resentencing, Hopkins has dressed up his challenge to the legality of his split sentence as a motion for early termination of probation, seeking to lop off one component of the holistic sentence this Court imposed for his conduct on January 6. The Court should deny this motion as the wrong procedural vehicle to challenge his illegal sentence. The proper mechanism for challenging an illegal sentence is through a direct appeal or a challenge pursuant to 28 U.S.C. § 2255, not a motion for early termination of probation. *See Pryer*, 2024 WL 404378, at *3-8 (discussing proper means of challenging illegal sentence and noting that "Court lacks authority to

11

'void' or vacate" split sentence where defendant filed motion for early termination of probation but did not challenge legality of sentence through direct appeal, § 2255 motion, or other means specified by Congress). In his motion, Hopkins appears to acknowledge that a § 2255 petition is the proper way to challenge an illegal sentence at this juncture but nevertheless suggests, without explanation, that the Court overlook his decision not to pursue relief through the appropriate procedural mechanism. Mot. at 1-2 ("Rather than raise this in an 18 USC 2255 petition, counsel suggests that this court simply enter an Order granting early termination of probation.").[5]

## V.    Resentencing Would Not Violate Double Jeopardy

Resentencing Hopkins (should he file the appropriate motion) would not violate double jeopardy so long as he receives credit for time already served. *See United States v. Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6 (D.D.C. Jan. 17, 2024) ("the Court may impose an additional punishment on Little so long as it appropriately credits the time Little served in prison and on probation against the punishment"); *United States v. Martin*, 363 F.3d 25, 37-38 (1st Cir. 2004) (unlawful term of probation must be credited against any subsequent sentence of incarceration); *United States v. Lominac*, 144 F.3d 308, 318 (4th Cir. 1998) (unlawful term of supervised release must be credited against any subsequent sentence of incarceration).[6]

---

[5] If Hopkins were to file a motion under § 2255, in the interests of justice, the government would consider waiving any applicable procedural barriers to the relief sought therein based on the D.C. Circuit's decision in *Little*, such as appellate or collateral review waivers, procedural defaults, or statutes of limitations.

[6] Because probation is a less restrictive penalty than incarceration, crediting time served on probation against a future term of incarceration, or crediting time incarcerated against a future term of probation, should not be "a day-to-day offset." *Martin*, 363 F.3d at 39. While the precise crediting ratio in this case is for the district court to consider, the specific ratio should derive from a "fact-based inquiry" that looks to "the specific conditions of [defendant's] probation and the effect of [any crediting] on the underlying purposes of the [sentencing statute] as set out in 18 U.S.C. 3553(a)." *Id*.

So long as credit is given for time already served, the Double Jeopardy Clause does not bar the imposition of an increased punishment at resentencing where a defendant does not have a legitimate expectation of finality in the sentence originally imposed. *See United States v. Fogel*, 829 F.2d 77, 87 (D.C. Cir. 1987) ("If a defendant has a legitimate expectation of finality, then an increase in that sentence is prohibited by the double jeopardy clause. If, however, there is some circumstance which undermines the legitimacy of that expectation, then a court may permissibly increase the sentence."); *see also United States v. DiFrancesco*, 449 U.S. 117, 137 (1980) ("the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase").

The district court in *Little* recently held on remand from the D.C. Circuit that Little lacked a legitimate expectation of finality and could be resentenced to additional punishment for two independent reasons—both of which apply to Hopkins. First, defendants like Little and Hopkins cannot "have a legitimate expectation that [their] sentence is final because it was illegal." *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5; *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "an increase in appellant's term of probation was not necessary to bring the sentence into compliance with any statute" as "[t]he originally imposed sentence was not impermissible under the penalty statute"); *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) ("A defendant cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification.").

Second, a defendant who attacks an unlawful sentence—by appealing or otherwise challenging the sentence—can have no legitimate expectation of finality in the sentence originally imposed. *See Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 (no legitimate expectation of

finality where, "as in this case, the defendant voluntarily placed his sentence at issue by challenging it") (cleaned up); *see also Fogel*, 829 F.2d at 88 (finding that one reason the defendant had a legitimate expectation of finality was because "the increase in the original sentence [was] also not predicated on any action taken by the [defendant]"); *United States v. Andersson*, 813 F.2d 1450, 1461 (9th Cir. 1987) ("Andersson has no legitimate expectation of finality in the original sentence when he has placed those sentences in issue by direct appeal and has not completed serving a valid sentence."). Unlike Little, Hopkins did not challenge his sentence on direct appeal. Nevertheless, Hopkins could not have a legitimate expectation of finality if he were to properly challenge the legality of his split sentence in a § 2255 motion. *See Townshend*, 178 F.3d at 567 n.1 (finding no violation of double jeopardy and distinguishing cases that did "not involve situations in which a defendant has voluntarily placed his sentence at issue by challenging it via § 2255").[7]

The fact that Hopkins already began serving his split sentence—and even that he already completed the term of imprisonment originally imposed—does not change this calculus. On remand from the D.C. Circuit, Little made similar arguments to Hopkins's, seeking to simply end the probationary component of his sentence without facing resentencing. And he argued that any punishment beyond the prison term he already had served violated double jeopardy. But as the *Little* district court and many other courts have recognized, a more severe punishment can be imposed at resentencing even after service of the original unlawful sentence has begun. *See, e.g.*, *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *5 ("An increased punishment is permissible even if the defendant has begun serving the original, illegal sentence, although any punishment

---

[7] Hopkins's challenge to the legality of his sentence through the improper avenue of a motion for early termination of probation is nothing more than an attempt to have his cake and eat it too. Hopkins should not be allowed to challenge the legality of his sentence through improper means and then claim that he maintains a legitimate expectation of finality in his illegal split sentence precisely because he did not raise his challenge through the proper means.

already incurred must be credited against the increased punishment."); *Hayes*, 249 F.2d at 517-18

("a sentence which does not conform with the applicable statute [because it is below the statutory

minimum] may be corrected though defendant . . . has begun to serve it"); *Lominac*, 144 F.3d at

317-18 (remanding to district court for resentencing after vacating supervised release component

of split sentence, noting that term of incarceration could be adjusted upwards even after defendant

completed originally imposed term of incarceration), *abrogated on other grounds by Johnson v.*

*United States*, 529 U.S. 694 (2000); *United States v. Versaglio*, 85 F.3d 943, 949 (2d Cir. 1996)

(remanding to district court to consider imposition of increased fine after invalidating incarceration

component of split sentence even after defendant already paid originally imposed fine in full);

*United States v. Holmes*, 822 F.2d 481, 498 (5th Cir. 1987) ("Correction of a sentence can occur

even if service of the sentence has begun, even if the correct sentence may be more onerous to the

defendant than the original.") (citation omitted); *Christopher v. United States*, 415 A.2d 803 (D.C.

1980) (affirming sentencing court's sua sponte correction of illegal split sentence by eliminating

probation component and imposing term of incarceration greater than that originally imposed

where defendant had already begun serving sentence).

A line of Supreme Court cases—starting with *Ex parte Lange*, 85 U.S. 163 (1873), and

including *In re Bradley*, 318 U.S. 50 (1943), relied on by defendants similarly situated to

Hopkins—does not hold otherwise. *Lange* and *Bradley* involved defendants sentenced to a fine

and imprisonment under statutes that permitted the imposition of either a fine or imprisonment. In

*Lange*, the Supreme Court held that the defendant was entitled to immediate release because he

had already paid the statutory maximum fine in full, stating that resentencing him to the alternate

punishment of imprisonment would "punish[] [him] twice for the same thing." 85 U.S. at 175.

Similarly, in *Bradley*, the Supreme Court held that the defendant "[wa]s entitled to be freed of

further restraint" because he had already paid the fine in full. 318 U.S. at 52. The full payments of

the fines in *Lange* and *Bradley* meant that those defendants had already fully suffered one of two

authorized alternative penalties such that no additional punishment could be imposed because

anything more would exceed the punishment that was statutorily authorized. In other words, these

cases stand for the unassailable but narrow proposition that "a defendant may not receive a greater

sentence than the legislature has authorized." *United States v. DiFrancesco*, 449 U.S. 117, 139

(1980).

Multiple courts, including the Supreme Court, have recognized the limited application of

*Lange* and *Bradley*. *See, e.g., Jones v. Thomas*, 491 U.S. 376, 383 (1989 ("Lange therefore stands

for the uncontested proposition that the Double Jeopardy Clause prohibits punishment in excess

of that authorized by the legislature, and not for the broader rule suggested by its dictum.") (citation

omitted); *id.* at 386 ("we do not think the law compels application of Bradley beyond its facts");

*see also Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *4 ("Little's [double jeopardy]

argument fails, however, because the case law does not support such a stark, sweeping reading of

*Lange* or *Bradley*."). Indeed, *Lange* and *Bradley* are a narrow exception to the general rule that

allows for resentencing after a defendant successfully challenges an unlawful sentence, even if

service of the sentence has already begun and even if the corrected sentence is more onerous than

the original. For example, the Fifth Circuit has recognized that the *Lange*/*Bradley* limitation

applies only where one of the alternative penalties imposes the maximum authorized sentence and

is satisfied in full:

> The *Bradley* cases stand apart from this general rule, however. The contempt statute
> authorizes only a fine or imprisonment, and the full payment of a fine satisfies one
> lawful alternative sentence. Sentences involving imprisonment not yet fully served
> or a term of imprisonment below the maximum authorized by an offense statute are
> not analogous, nor are cases in which a defendant appeals a dual sentence before
> satisfying either prong. What differentiates the *Bradley*-type case from these other

cases is that a *Bradley* defendant who has paid his fine has suffered the maximum sentence authorized by the statutes.

*Holmes*, 822 F.2d at 498-99; *see also id.* at 499 n.30 (listing cases not controlled by *Bradley* because, among other things, they involved "resentencing . . . after sentences that were below the maximum authorized by offense statutes, or after a defendant appealed the entirety of his sentence or challenged a sentence but had not fully satisfied a sentence as great as the law allows").

Courts have recognized other limitations to the *Lange/Bradley* rule that are relevant here. For example, in *Lominac*, the Fourth Circuit held that "*Bradley* does not bar resentencing" where two components of an unlawful split sentence are of the type that can be credited against each other. 114 F.3d at 318. The defendant in *Lominac* was originally sentenced to both imprisonment and supervised release even though the applicable statute only authorized the imposition of incarceration in the defendant's particular circumstances. *Id.* at 317-18. And by the time the Fourth Circuit heard the appeal, the defendant had already served the entire term of incarceration and some portion of the term of supervised release imposed under the unlawful split sentence. *Id.* at 317. Nevertheless, the Fourth Circuit found that remanding to the district court for resentencing was appropriate because, "[h]ad the court recognized that it lacked authority to impose the . . . term of supervised release, it might have validly concluded that a prison term of longer than six months was appropriate." *Id.* The Fourth Circuit distinguished *Bradley*, noting that while the "'alternative sentences in *Bradley*'" of imprisonment and a fine "'were of a different type' and it simply was not 'possible to credit a fine against time in prison,'" "it is possible to credit [defendant's] time served on supervised release against any time to be served in prison." *Id.* at 318 (quoting *Thomas*, 491 U.S. at 384). In other words, "[u]nlike the monetary sanction of a fine, which cannot be converted into an equivalent temporal sanction, [defendant's] term of supervised release

restrained his liberty for a known period of time that can be credited against any future sentence of imprisonment." *Id.*

Similarly, in *Versaglio*, the Second Circuit held that *Lange*/*Bradley* does not prohibit resentencing a defendant to an increased fine on remand where the district court had originally imposed an unlawful split sentence of a fine and imprisonment and where the defendant had already paid the full amount of the originally imposed fine. 85 F.3d at 948. The Second Circuit vacated the term of imprisonment because the fine had already been paid and noted that "[n]o issue was raised in either *Lange* or *Bradley* as to a sentencing court's power to revise the *amount* of a fine in light of the unavailability of imprisonment." *Id.* (emphasis in original). Thus, recognizing that the two components of the original split sentence were intertwined, the Second Circuit remanded the case to the district court to "consider[] whether to make an upward adjustment in the amount of the fine" in order to maintain "the aggregate punitive effect of [the original] sentence." *Id.* at 949.

Here, *Lange*/*Bradley* provides no bar to resentencing Hopkins to a longer term of incarceration, or alternatively to a term of probation, for at least two distinct reasons. First, unlike *Lange* and *Bradley*, the alternative sentences here do not involve penalties that are impossible to credit against each other. Rather, as described above, any time previously served in prison and any time previously served on probation should be credited against any future sentence of imprisonment or probation imposed at resentencing. *See Lominac*, 114 F.3d at 318; *Martin*, 363 F.3d at 37-38; *Little*, No. 21-CR-315-RCL, 2024 WL 181260, at *6.

Second, the term of incarceration that Hopkins completed was well below the statutory maximum of six months and resentencing him to a longer term of incarceration or alternatively to a term of probation (taking account of any time already served) would not exceed the maximum

punishment authorized by statute. Indeed, the district court intentionally crafted a dual sentencing scheme suited to Hopkins's specific offense and circumstances in which each component weighed against the other and played an integral part in the overall plan. "Had the court recognized that it lacked authority to impose the [split sentence], it might have validly concluded that a prison term of longer than [35 days] [or that a standalone probationary term] was appropriate." *Lominac*, 144 F.3d at 317. Thus, the district court "should have the option of considering whether to make an upward adjustment in the" term of imprisonment or whether to impose a standalone term of probation at resentencing. *Versaglio*, 85 F.3d at 948.[8]

## VI.    Hopkins Has Not Met The Standard For Early Termination Of Probation

The Court may separately grant a motion for early termination of probation if, "after considering the factors set forth in section 3553(a)," "it is satisfied that [early termination] is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c); *see also United States v. Rader*, No. 22-cr-57-RCL, 2024 WL 474535, at *2 (D.D.C. Feb. 7, 2024) ("'The conjunction 'and' used in the statute . . . clearly indicates that a district court must conclude that the early termination of supervised release is warranted by *both* the individual's conduct and

---

[8] *But see United States v. Pryer*, No. 21-CR-667-RCL-ZMF, 2024 WL 179914 (D.D.C. Jan. 17, 2024) (recommending that probationary term of split sentence be voided where defendant already completed term of incarceration), *report and recommendation rejected sub nom. United States v. Pryer*, No. 21-CR-667-RCL-2, 2024 WL 404378 (D.D.C. Feb. 2, 2024). In *Pryer*, another case in which a defendant moved for early termination of the probationary term of a split sentence in light of *Little*, Magistrate Judge Faruqui issued a Report and Recommendation to Judge Lamberth, finding that resentencing would violate double jeopardy and recommending that the term of probation be voided. Magistrate Judge Faruqui rejected arguments similar to those made here by the government, finding that "*Lange* and *Bradley* dictate the outcome." *Id.* at *2. Judge Lamberth, however, declined to adopt Magistrate Judge Faruqui's recommendation, noting among other things that *Lange* and *Bradley* do not bar resentencing and specifically that "double jeopardy principles would not preclude the Court from resentencing [the defendant], and imposing additional punishment, so long as it credited the punishment already incurred." *Pryer*, 2024 WL 404378, at *7 n.8.

also by the interests of justice.'" (quoting *United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999)). None of these conditions are met here.

Hopkins's conduct does not warrant early termination of probation. Hopkins participated in the most serious, violent assault on our democratic institutions in modern history. Nonetheless, he suggests that his service of his four-month prison term "without incident" and that his compliance with the terms of his probation warrant early termination. Def. Mot. at 1.[9] But mere compliance with the conditions of supervision does not warrant early termination. *See, e.g.*, *Rader*, 2024 WL 474535, at *3 (noting that "Courts have typically held that defendants seeking early termination under § 3564(c) must demonstrate more than just compliance with the terms of probation" and denying motion for early termination by defendant sentenced to illegal split sentence of incarceration and probation where defendant had not shown "changed circumstances or exceptionally good behavior"); *United States v. Wesley*, 311 F. Supp. 3d 77, 81–82 (D.D.C. 2018) ("even perfect compliance with conditions of release does not qualify as 'exceptionally good behavior' warranting early termination").

Consideration of the section 3553(a) factors confirms that probation should not be terminated early, and indeed, as the Court noted at sentencing, "this is an unusual case, because I think all the factors are at play here." Sentencing Tr. at 28. As to the nature and circumstances of the offense (§ 3553(a)(1)), the Court noted that "what happened on January 6th […] was no less than an attempt to overthrow the government, to halt the lawful transfer of power that has gone on uninterrupted in this country since its founding." *Id.* As to Hopkins's specific conduct, the Court noted that Hopkins re-entered the Capitol after observing the violence during his first entrance,

---

[9] The Government represents that it has inquired with the probation office overseeing Hopkins's probation, and that office reports that there have been no violations of probation.

and that Hopkins's "conduct was serious and clearly intentional and knowing." *Id.* at 31. Thus, "[e]arly termination would . . . detract from the sentence's ability to 'reflect the seriousness of' and 'provide just punishment for' [Hopkins's] offense, since early termination would prevent [Hopkins] from completing the punishment the Court deemed appropriate when imposing his sentence." *Rader*, 2024 WL 474535, at *4 (quoting § 3553(a)(2)(A)). Moreover, "granting early termination to a defendant who has not come close to showing changed conditions or exceptionally good behavior would not 'promote respect for the law,' and might instead undermine 'adequate deterrence to criminal conduct.'" *Id.* (quoting § 3553(a)(2)(A)-(B)).

And as to the defendant's criminal history (§ 3553(a)(1)), Hopkins has a lengthy and troubling criminal history dating back to 1994, as discussed in greater detail in the United States's Sentencing Memo (ECF No. 31 at 10-11). This criminal history includes a rape conviction, for which Hopkins served seven years in State prison, as well as at least five offenses while on a form of supervision. *Id.* This Court noted that the rape conviction "was one of the most disturbing sexual assaults I've read about in a long time." Sentencing Tr. at 31-32.

Finally, the interest of justice does not weigh in favor of early termination of probation. As a threshold matter, the legality of a sentence is not a proper consideration under section 3564(c). *See Rader*, 2024 WL 474535, at *4 ("The 'interest of justice' phrase does not give the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the . . . probation period." (internal citations and quotation marks omitted)).[10]

---

[10] *Cf. United States v. Lussier*, 104 F.3d 32, 34, 36 (2d Cir. 1997) (court without authority to modify conditions of supervised release under § 3583(e)(2) on basis that condition is illegal, noting that defendant did not challenge condition on direct appeal or through § 2255 motion and that use of § 3583(e)(2) motion to challenge legality of condition would "disrupt[] the established statutory scheme governing appellate review of illegal sentences" and would be "inconsistent with the scheme of appellate and collateral review established by the Sentencing Reform Act of 1984").

And, as explained above, the proper avenue for addressing the illegality of a split sentence of incarceration and probation is resentencing—not simply ending one component of an unlawful sentencing package. The interest of justice is not served by circumventing the proper remedy to an illegal sentence. This is especially true where, as here, the Court carefully crafted a split sentence with two components—a term of incarceration, followed by a term of probation—to address the specific circumstances of a defendant's offense and satisfy its statutory responsibility to "impose a sentence sufficient, but not greater than necessary, to comply with the purpose of [the sentencing statute]." 18 U.S.C. § 3553(a). Granting Hopkins's requested relief would allow him to escape the full penalty for his crime after having served one component of an illegal sentence that alone is "[in]sufficient . . . to comply with the purpose of [the sentencing statute]." *Id.*; *see also Rader*, 2024 WL 474535, at *4 ("The interest of justice might arguably *disfavor* early termination, because that would result in the defendant ultimately receiving an amount of punishment less than what the Court initially found appropriate under the § 3553 factors.").

**VI.**   <u>**Conclusion**</u>

For the reasons set forth above, the government respectfully requests that the Court hold in abeyance Hopkins's Motion for Early Termination of Probation. And, in the alternative, to the extent that the Court denies the abeyance motion, the government respectfully requests that the Court deny Hopkins's motion for early termination of probation and, upon the filing of an appropriate motion pursuant to 28 U.S.C. § 2255, resentence him to a legal sentence.[11]

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

---

[11] If Hopkins files an appropriate motion pursuant to 28 U.S.C. § 2255, the government intends to file a supplemental sentencing memorandum prior to resentencing.

D.C. Bar Number 481052

By:    /s/ Jeffrey A. Kiok
       JEFFREY A. KIOK
       Attorney (detailed)
       N.Y. Bar Number 5400221
       950 Pennsylvania Ave. N.W., Suite 6700
       Washington, D.C. 20530
       Telephone: (202) 307-5967
       Email: jeffrey.kiok2@usdoj.gov